# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

YAHYA MOHAMMAD, and
YASIN YASIN

**FILED**
NOV - 1 2007
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**07CR 719**

CRIMINAL COMPLAINT

CASE NUMBER:

UNDER SEAL

MAGISTRATE JUDGE KEYS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about <u>August, 2007 to Present</u>, in <u>Cook</u> county, in the <u>Northern</u> District of <u>Illinois</u>, <u>Eastern Division</u>, and elsewhere, the defendants:

> knowingly conspired to receive, possess, conceal, store, barter, sell, and dispose of goods, wares, or merchandise of the value of $5000 or more, which have crossed state lines after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, in violation of Title 18 United States Code, Section 2315,

in violation of Title <u>18</u> United States Code, Sections <u>371</u>.

I further state that I am a <u>Special Agent of the United States Secret Service</u> and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

Special Agent Joel Heffernan
United States Secret Service

Sworn to before me and subscribed in my presence,

November 1, 2007                            at    Chicago, Illinois
Date                                              City and State

Arlander Keys                                     Signature of Judicial Officer
Name & Title of Judicial Officer

STATE OF ILLINOIS    )
                     )
COUNTY OF COOK       )

## AFFIDAVIT

I, JOEL C. HEFFERNAN, state as follows:

1. I have been employed by as a Special Agent with the United States Secret Service since June of 2003. I am currently assigned to the Chicago Field Office, Financial Crimes Squad. As part of my duties, I investigate financial crimes, such as counterfeit checks, access device fraud, bank fraud and forgery. I have received training in the areas of counterfeit checks, access device fraud, bank fraud and forgery.

2. This affidavit is based on my personal knowledge, as well as information obtained from official documents and the personal knowledge of other law enforcement officials.

3. This affidavit is submitted in support of a complaint that there is probable cause to believe that Yasin YASIN and Yahya MOHAMMAD did conspire to knowingly receive, possess, conceal, store, barter, sell, and dispose of goods, wares, or merchandise of the value of $5000 or more, which have crossed state lines after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken in violation of Title 18 of the United States Code, Sections 371 and 2315.

4. This affidavit does not contain all of the information known to law enforcement regarding this investigation, but rather, contains only those facts believed to be necessary to establish probable cause.

*Sprint / Nextel Scheme*

5. On or about August 27, 2007, an employee of Sprint Corporate Security identified a shipment of four packages of Sprint phones that appeared to be fraudulent. The four packages were ordered from an existing corporate account at Sprint, but the shipping address for the corporation had recently been changed to an address that Sprint Corporate Security had identified as the shipping address for a series of fraudulent orders of cellular phones. In addition, while the legitimate corporate account holder was a business located in downtown Chicago, the shipping address had been changed to a south side Chicago residence. The packages were identified as being addressed to the legitimate account holding business.

6. Later that day, law enforcement agents made a controlled delivery of the four packages of Sprint phones, which was worth over $12,000, to the Chicago address. The person who accepted the delivery at the house ("CS1") subsequently cooperated with law enforcement. CS1 admitted that he/she was not actually the person he/she claimed to be when signing for the package. CS1 admitted that he/she had signed for numerous other Sprint packages using other alias names in the past. CS1 stated that he/she was paid by another person, Individual A to sign for the deliveries, and that Individual A then comes to pick up the packages from her. CS1 agreed to call Individual A and have her come and get the shipment of stolen phones.

7. On the same date, a person later identified as Individual A, came to the same south side address and took possession of the phones. After taking possession of the phones,

Individual A was detained and advised of her Miranda rights. Individual A waived his/her rights and agreed to speak with the interviewing officers and agents.

8. Individual A acknowledged that he/she had placed fraudulent orders for Sprint phones using legitimate business accounts and changing the shipping address. Individual A stated that he/she has been receiving stolen cellular phones for approximately one year. Initially, Individual A stated that he/she began "cold calling" sprint telephone numbers that began with a (708) 417 prefix and posing as a Sprint customer service representative. During the conversation, Individual A would explain that the person or business was eligible for a rebate and Individual A needed to get their account information to process the claim. If Individual A obtained the account information from the person or business, he/she would call Sprint, change the shipping address on the account, and order an upgraded phone. Once he/she received the phones he/she would sell them to a cellular phone dealer for approximately $125 a piece. Individual A stated that he/she initially sold the phones to a man he/she knew as "Ali" at the "ABC Choice" cellular store located at 103rd Street and Halsted, Chicago, IL. "Ali" was subsequently identified by law enforcement agents to be Yasin YASIN. Individual A confirmed from YASIN's Illinois driver's license photo that YASIN was the man known to Individual A as "Ali." Individual A indicated that YASIN paid him/her cash for the phones. Individual A stated that YASIN eventually moved his store to 74th and Halsted, Chicago, IL (the SUBJECT PREMISES). Individual A continued to sell phones to YASIN at this new address. Individual A estimated that he/she has profited between $1,100 to $3,000 a week for the last year in selling stolen cellular phones to YASIN.

9. Individual A stated that in about November of 2006, while he/she was in the SUBJECT PREMISES, he/she met a man who told him/her that he had a "code" for Sprint accounts. The unknown subject explained that with this code he/she would be able to access Sprint accounts and order as many phones as he/she wanted. Individual A agreed to purchase the code for $1,000. Individual A demonstrated to law enforcement officers how to place fraudulent orders utilizing this code. First he/she logged on to www.Sales.Nextel.com, and entered the code and password he/she obtained from the man in the SUBJECT PREMISES. Individual A then would access account information by using valid prefixes of Sprint/Nextel phones and random last four digits. Once he/she identified a valid business account, he/she would call Sprint/Nextel and request to upgrade the current phones on the account to Sprint 755 P Treo phones. While speaking with the representative on the phone, he/she would pose as the authorized person assigned to manage that businesses account. Lastly, Individual A would change the shipping address on the account. Individual A stated that he/she currently utilized three addresses when changing the shipping address on the account, including the south side address to which the controlled delivery was made on or about August 27, 2007. Individual A indicated that the Sprint / Nextel phones fraudulently obtained in the above manner were shipped to Illinois from Louisville, Kentucky. Sprint Corporate Security confirmed that the phone were shipped from Louisville to Chicago.

10. On the same date, Sprint Corporate Security ran a check of the addresses Individual A identified as utilizing in this scheme. This preliminary check revealed that between July

2, 2007 and August 24, 2007, there were a total of approximately $140,000 worth of fraudulently obtained phones ordered to be shipped to these addresses.

*Delivery of Cellular Phones*

11. Cooperating Source 2 (CS2) is an individual with three felony convictions who was identified by law enforcement as having been involved in this scheme of fraudulently obtaining Sprint / Nextel phones and selling them to YASIN at ABC Choice. CS2 is currently facing a violation of probation charge as well as a state identity theft charge, and agreed to cooperate in this investigation in the hope of helping with the charges that he/she is facing. CS2 admitted to ordering/receiving fraudulent phones from Sprint in a similar fashion to Individual A. CS2 admitted that he/she had been engaged in this scheme for several years. CS2 had for several years sold fraudulently obtained phones to YASIN, but primarily sold his phones to a person known to CS2 as "Nick." "Nick" was later identified through his driver's license photo by CS2 to be Yahya MOHAMMAD.

12. When CS2 sold phones to MOHAMMAD or YASIN, CS2 would first call to say that he was coming to see them with phones. CS2 would then come to either the SUBJECT PREMISES or MOHAMMAD's cell phone store. On the occasions that CS2 sold phones to YASIN in the SUBJECT PREMISES, YASIN would give CS2 a black plastic bag to bring the phones into the store. YASIN would then pay CS2 in cash for the phones. CS2 does not know if YASIN owns the SUBJECT PREMISES. However, CS2 indicates that it is his/her experience, as well known in the neighborhood that YASIN runs the SUBJECT PREMISES and is present there on a daily basis. CS2 indicates that YASIN keeps large amounts of cash in the SUBJECT PREMISES from these transactions. Law

enforcement surveillance observed YASIN utilizing armed security guards and armored cars when moving money in or out of the SUBJECT PREMISES.

13. On or about October 16, 2007, law enforcement agents met with CS2 and equipped him/her with audio and video recording devices. Law enforcement agents then observed CS2 as he/she entered the SUBJECT PREMISES. There, CS2 spoke with YASIN. This conversation was recorded with both audio and video. CS2 informed YASIN that he/she had cellular phones that he/she would like to sell to YASIN. During this conversation, YASIN acknowledged that he had bought cell phones in the past, but informed CS2 that he was no longer buying phones and that CS2 should contact Yahya MOHAMMAD to deliver the phones to MOHAMMAD. CS2 understood YASIN to mean that MOHAMMAD would then deliver the phones to YASIN. During this meeting, CS2 observed a pistol in the waistband of YASIN's pants. CS2 observed a laptop computer in the SUBJECT PREMISES during this meeting.

14. In my experience individuals engaged in the purchase, sale, or transportation of stolen or fraudulently obtained merchandise often use computers or other electronic storage devices as a means of storing information regarding purchase, sale, or transportation of such stolen or fraudulently obtained items.

15. During this meeting with YASIN, CS2 observed large quantities of Sprint /Nextel cellular phones stacked in the warehouse portion of the SUBJECT PREMISES, which is located at the back of the store. YASIN was present when CS2 observed these phones in the warehouse portion of the SUBJECT PREMISES. In addition, to CS2 providing this information, Individual A also reported consistently seeing large chanties of Sprint /

Nextel phones in the warehouse portion of the SUBJECT PREMISES. This portion of the store is not visible from the front or customer portion of the store. Although ABC Choice, the business located at the SUBJECT PREMISES has a Sprint / Nextel logo on its storefront, according to Sprint Corporate Security, ABC Choice is not a licenced retailer or distributor of Sprint / Nextel phone. Sprint Corporate Security indicated that there would be no legitimate purpose for ABC Choice to have any inventory of Sprint / Nextel phones.

16. On or about October 30, 2007, at approximately 4:45 p.m., CS2 was contacted by MOHAMMAD and was told to bring the phones that he/she had to MOHAMMAD's cell phone store located at 147th and Wood in Harvey, Illinois. During this conversation, MOHAMMAD told CS2 to be careful in coming down to the store as he had previously observed a police takedown occur in front of his store. In relaying the contents of this conversation, CS2 was able to provide specific details of this police takedown that would otherwise be unknown to him. This conversation was not recorded, but the specific details provided by CS2 regarding the takedown match information known to the Secret Service.

17. Later that same day, at approximately 6:00 PM, CS2 placed a recorded call to MOHAMMAD and informed him that he/she had 20 phones to sell right now, and had 20 more that he/she could retrieve relatively soon. MOHAMMAD asked CS2 to bring the initial 20 phones to his store at approximately 8:00 PM.

18. At approximately 8:00 PM, law enforcement observed CS2 arrive at MOHAMMAD's store and deliver 20 Nextel Model i880 cell phones to MOHAMMAD in exchange for

approximately $1800 in cash. This transaction and associated conversation were also recorded on both audio and video. Additionally, MOHAMMAD agreed to forgive a $200 debt CS2 owed to MOHAMMAD. CS2 informed MOHAMMAD that he would have the 20 additional phones in the morning. MOHAMMAD asked CS2 to return to the store the following morning at approximately 8:00 AM. The 20 Nextel cell phones that were delivered in this transaction were provided by Sprint Corporate Security. During this meeting, CS2 observed a pistol in the waistband of MOHAMMAD. CS2 was searched for United States currency and contraband immediately before and after this transaction. After the transaction, CS2 had $1800 on his person. CS2 surrendered this money to Secret Service agents.

19. At approximately 8:30 AM on or about October 31, 2007, CS2 again met with MOHAMMAD at the cell phone store located at 147th and Wood. During this meeting, CS2 delivered an additional 20 Nextel Model i880 phones. This transaction and associated conversation were also recorded on both audio and video. Again these phones were provided by Sprint Corporate Security. MOHAMMAD paid CS2 $1550 in cash and promised to pay him an additional $450 in a few days. CS2 was searched for United States currency and contraband immediately before and after this transaction. After the transaction, CS2 had $1550 on his person. CS2 surrendered this money to Secret Service agents

*Historical Records*

20. CS2 indicated that it is his understanding that once phones are sold to MOHAMMAD, MOHAMMAD delivers these phones to YASIN. CS2 indicated that YASIN then takes

-8-

the phones acquired from MOHAMMAD, and combines them with whatever phones YASIN acquires directly and ships these phones out of the state to another entity that pays YASIN for the phones.

21. During this investigation, Federal Express (FedEx) shipping records associated with the corporate entity "Yasin Yasin Enterprises" were obtained. These records include all shipments associated with YASIN's FedEx account from August of 2006 through August of 2007. During this time period, YASIN's home and the SUBJECT PREMISES were the point of origin for hundreds of shipments to numerous addresses, primarily located in New York and Los Angeles. Records indicate that these shipments from YASIN's home and ABC Choice often weighed in excess of one hundred pounds. The shipments were made to retail cell phone businesses. Several of these New York addresses have been the subject of previous search warrants in similar Secret Service investigations involving this same scheme. During the execution of these search warrants, large volumes of stolen and fraudulently obtained cell phones were recovered.

## *Conclusion*

22. Based on the aforementioned facts, your affiant respectfully requests that a criminal complaint be issued charging Yasin YASIN and Yahya MOHAMMAD with knowingly conspiring to receive, possess, conceal, store, barter, sell, and dispose of goods, wares, or merchandise of the value of $5000 or more, which have crossed state lines after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully

converted, or taken in violation of Title 18 of the United States Code, Sections 371 and 2315.

FURTHER AFFIANT SAYETH NOT.

_____
Special Agent Joel Heffernan
United States Secret Service

SUBSCRIBED and SWORN to before me

this 1st day of November, 2007

_____
Arlander Keys
United States Magistrate Judge